**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ERNESTO VENANCIO GUINEA, Individually and on Behalf of All Others Similarly Situated,**<br><br>          **Plaintiff,**<br><br>-against-<br><br><br>**GARRIDO FOOD CORP. d/b/a IDEAL FOOD BASKET and ANDRES FERREIRA, Jointly and Severally,**<br><br>          **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br><br><br>**Jury Trial Demanded** |

Plaintiff Ernesto Venancio Guinea (the "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a former supermarket employee at one of Defendants' supermarkets located in Brooklyn, New York.  For his work, during the relevant time period, Plaintiff was not

paid minimum wages for all hours worked and was not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiff brings this action to recover unpaid minimum wages and overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings claims for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

7.      <u>Plaintiff Ernesto Venancio Guinea</u> ("Guinea") was, at all relevant times, an adult

2

individual residing in Kings County, New York.

8.     Throughout the relevant time period, Plaintiff performed work for Defendants at their supermarket located at 1086 Brooklyn Avenue, Brooklyn, New York 11203.

9.     Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**<u>Defendants</u>:**

10.     Garrido Food Corp. is an active New York Corporation doing business as "Ideal Food Basket Supermarket" (previously known as NSA Supermarket) with its principal place of business at 1086 Brooklyn Avenue, Brooklyn, New York 11203.

11.     Garrido Food Corp. is hereinafter referred to as "Ideal Food Basket" or the "Corporate Defendant."

12.     Upon information and belief, Defendant Andres Ferreira ("Ferreira") is an owner and operator of the Corporate Defendant.

13.     Defendant Ferreira is hereinafter referred to as the "Individual Defendant" and, together with the Corporate Defendant, the "Defendants."

14.     The Individual Defendant maintained operational control over the Corporate Defendant and managed his Ideal Food Basket Supermarkets and other supermarkets he owns, by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiff.

15.     The Individual Defendant employed Plaintiff, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

16.     The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiff and the Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

17.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

18.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

19.     At all relevant times, Plaintiff, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

20.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

21.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First and Second Causes of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since October 16, 2016 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Ideal Food Basket Supermarket (previously NSA Supermarket) located at 1086 Brooklyn Avenue, Brooklyn, New York 11203 (the "Collective Action Members").

22.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

23.    Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

### RULE 23 CLASS ACTION ALLEGATIONS

24.    Pursuant to the NYLL, Plaintiff brings his Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at any time since October 16, 2013 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Ideal Food Basket Supermarket (previously known as NSA Supermarket) located at 1086 Brooklyn Avenue, Brooklyn, New York 11203 (the "Class Members").

25.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

26.    The Class Members are so numerous that joinder of all members is impracticable.

27.    Upon information and belief, there are in excess of forty (40) Class Members.

28.    The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

> a.    whether Defendants employed Plaintiff and the Class Members within the

meaning of the NYLL;

b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c. whether Defendants failed and/or refused to pay Plaintiff and the Class Members minimum wage for all hours worked;

d. whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e. whether Defendants failed to pay Plaintiff and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

f. whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g. whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h. whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

i. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

29. Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class Members, is a supermarket employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, paid less than the statutory

minimum wage for all hours worked, was not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, was not paid spread-of-hours premiums when working a shift of ten (10) or more hours and/or a split shift, did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

30. <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

31. Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

32. <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

33. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

34. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other current litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Ideal Food Basket Supermarkets

35.     Upon information and belief, during the relevant time period, Defendants have owned and operated at least thirty-three (33) supermarkets in the New York City and New Jersey area.

36.     Upon information and belief, during the relevant time period, Defendant Andres Ferreira, through different corporations, has owned and operated at least fourteen (14) supermarkets in the greater New York City area.

37.     At all times relevant, Defendants' Ideal Food Basket Supermarkets stores operated under the umbrella of the "America's Food Basket LLC" cooperative of supermarkets, that includes at least fifty (50) locations all around New York, New Jersey, Connecticut, Georgia, Massachusetts, and Rhode Island. (*See* https://www.idealfoodbaskets.com/locations/ and https://www.afbasket.com/locations/).

38.     Throughout the relevant time period, the Individual Defendant has operated and managed several Ideal Food Basket and America's Food Basket Supermarkets locations (many of them previously known as NSA Supermarkets) and other supermarkets, some since in or around December 31, 1991.

39.     Defendant Garrido Food Corp. was registered with the New York State Department of State, Division of Corporations on July 19, 1996.

40.     Upon information and belief, and according with New York State Department of State, Defendant Andres Ferreira appears as Chief Executive Officer for Garrido Food Corp.

41.     Upon information and belief, during the relevant time period, Defendant Andres Ferreira, was a constant presence at the 1086 Brooklyn Avenue supermarket location, where he

8

managed the operations of the supermarket and took an active role in ensuring that the grocery store was run in accordance with his procedures and policies.

42.    Upon information and belief, at all relevant times, the Individual Defendant has had power over payroll and personnel decisions at the 1086 Brooklyn Avenue supermarket location, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

43.    Upon information and belief, at all times relevant, the Individual Defendant, directly or through his agents and employees, operated and managed all the supermarkets he owns with the same or substantially similar employment practices and policies, and through common management, ownership and financial control.

**Plaintiff's Work for Defendants**

44.    **Plaintiff Ernesto Venancio Guinea** was employed by Defendants as a butcher, porter, cleaner, and grocery employee at their 1086 Brooklyn Avenue location from in or around February 2011 to on or about March 19, 2019 (the "Guinea Employment Period").

45.    Throughout the Guinea Employment Period, Plaintiff Guinea was typically scheduled to work six (6) days per week, with most Mondays off (at the beginning of his employment period) or Fridays off (at the end of his employment period).  From in or around 2011 to in or around 2017, Plaintiff Guinea generally worked from approximately 8:00 am to approximately 7:00 pm, for a total of approximately sixty-six (66) hours per week.  During this period, Plaintiff Guinea rarely was able to take a one (1) hour uninterrupted lunch break.

46.    During a portion of that period of time, from in or around 2014 to in or around 2016 (for a period of approximately 2 years), in addition to the obligations and schedule Plaintiff Guinea had in the meat department area, after he finished with his responsibilities around 7:00 pm, he was

9

required to remain at the market until the market was closed to do the cleaning of the premises from between approximately 8:30 pm and 9:00 pm to between approximately 11:30 pm and 12:00 am, during three (3) days per week, adding seven and one-half (7.5) to ten and one-half (10.5) hours to his regular schedule, for a total of approximately seventy-three and one-half (73.5) to seventy-six and one-half (76.5) hours per week.

47.     From in or around 2017 to in or around 2019, Plaintiff Guinea generally worked six (6) days per week, from approximately 9:00 am to approximately 7:00 pm, for a total of approximately sixty (60) hours per week. During this period, Plaintiff Guinea was rarely able to take a one (1) hour uninterrupted lunch break.

48.     For the last portion of his employment period, from in or around January 2019 to in or around March 2019, Plaintiff Guinea generally worked with the following schedule: Mondays, Tuesdays, and Wednesdays, from approximately 9:00 am to approximately 6:00 pm; Thursdays, from approximately 10:00 am to approximately 6:00 pm; Saturdays from approximately 10:00 am to approximately 6:00 pm; and Sundays from approximately 9:00 am to approximately 5:00 pm, for a total of approximately fifty-one (51) hours per week.  During this period, Plaintiff Guinea was able to take a one (1) hour uninterrupted lunch break, twice per week.

49.     Throughout the Guinea Employment Period, Defendants always deducted one (1) hour per day from Plaintiff Guinea's hours worked during the week, as a break for lunch, despite the fact that Plaintiff was rarely able to take a full one (1) hour break, let alone every day of the work week.

50.     For his work, from the beginning of the Guinea Employment Period in or around 2011 to in or around 2013, Plaintiff Guinea was paid a purported salary in the amount of two hundred and eighty dollars ($280.00) per week.

51.    From in or around 2014 to in or around 2015, when Plaintiff Guinea began to combine his responsibilities as a cleaning employee and meat department employee, Plaintiff Guinea was paid a purported salary in the amount of four hundred dollars ($400.00) per week, which corresponded to compensation of two hundred and eighty dollars ($280.00) for his work as a meat department employee and one hundred and twenty dollars ($120.00) for his work as a cleaning employee.

52.    From in or around 2015 to in or around 2016, Plaintiff Guinea was paid a purported salary in the amount of four hundred and twenty dollars ($420.00) per week, which corresponded to compensation of three hundred dollars ($300.00) per week for his work as a meat department employee and one hundred and twenty dollars ($120.00) for his work as a cleaning employee.

53.    From in or around 2016 to in or around 2017, Plaintiff Guinea was paid a purported salary in the amount of four hundred and twenty dollars ($420.00) per week, just for his work at the meat department.

54.    Given the number of hours that Plaintiff Guinea worked each week, especially during the time he was performing work as a meat department employee and cleaning employee, and the low amount of his fixed weekly salary, Guinea regularly received less than the applicable minimum wage for all hours that he worked each week.

55.    From in or around 2017 to in or around 2018, Plaintiff Guinea was paid by hour. Plaintiff was paid the amount of approximately nine dollars ($9.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek. During the last approximately three (3) months of his employment during 2019, Plaintiff Guinea was paid the amount of fifteen dollars ($15.00) per hour for all hours for which he received compensation.

56.    As such, throughout the Guinea Employment Period, Plaintiff Guinea was not paid

overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

57.    Despite the fact that Guinea regularly worked shifts in excess of ten (10) hours throughout the Guinea Employment Period, Guinea was not paid spread-of-hours premiums for such days.

58.    Throughout the Guinea Employment Period, Plaintiff was paid weekly and received his wages entirely in cash, without receiving a pay stub or any other wage statement. However, Guinea was requested to sign a document – which he was not able to retain a copy of and which was not explained to him – that included certain information regarding the number of hours worked during the week and the amount of money he was receiving in cash.

**Defendants' Unlawful Corporate Policies**

59.    Plaintiff and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

60.    Plaintiff has spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiff minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

61.    Plaintiff has spoken with other employees of Defendants who were similarly paid a fixed salary and/or the same hourly rate for all hours worked, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiff overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applies to non-

management employees throughout the Class Period.

62.    Defendants' failure to pay Plaintiff spread-of-hours premiums for days in which Plaintiff worked a spread of more than ten (10) hours and/or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

63.    Defendants' policies of paying certain employees on a "salary" basis rather than an hourly basis after January 1, 2011, violated 12 N.Y.C.R.R. § 146-2.5.

64.    Defendants have not provided Plaintiff or Class Members with wage notices at the time of hire or by February 1 of each year.

65.    Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

66.    Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements and wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

67.    Upon information and belief, throughout the Class Period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

68.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

70.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

71.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

72.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated

and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

74.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

75.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Class Members)**

89.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

91.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

92.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

94.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiff and the Class Members)**

95.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day,

in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

97.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiff and the Class Members)**

98.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

100.     Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each day that the violations

occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>**
**(Brought on Behalf of Plaintiff and the Class Members)**

101.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

103.    Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.     An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.     An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An award of prejudgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      October 16, 2019

               Respectfully submitted,

               **PELTON GRAHAM LLC**

               By: _____

               Brent E. Pelton (BP 1055)
               pelton@peltongraham.com
               Taylor B. Graham (TG 9607)
               graham@peltongraham.com
               111 Broadway, Suite 1503
               New York, New York 10006
               Telephone: (212) 385-9700
               Facsimile: (212) 385-0800

               *Attorneys for Plaintiff and the putative*
               *FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of NSA SUPERMARKETS and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages and damages for violations related with harassment and/or discrimination claims as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

_Ernesio Guinea_
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de NSA SUPERMARKETS y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos, al igual que los danos que puedan surgir por violaciones relacionadas con los actos de acoso laboral y/o discriminación sufridos en esa entidad, tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_Ernesio Guinea_
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.